## ST. LOUIS SMELTING & REFINING CO. v. HENKE.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1922.)

No. 2995.

1. **Evidence** ⟨⟩113(7)—Crop and sale thereof as evidence of market value of land.

In an action for damages to orchard from fumes of smelting plant, evidence of the crop produced and the sale thereof *held* admissible, not as showing the market value of the land itself, but as proving its adaptability to special purpose, in corroboration or support of evidence of market value.

2. **Evidence** ⟨⟩544—One assisting expert held not qualified as expert.

In action for damages to orchard from fumes of smelting plant, a witness who merely assisted an expert in determining the effect of fumes on the surroundings, and who had no technical training, was not qualified as an expert.

3. **Trial** ⟨⟩133(6)—Improper argument of counsel held cured by the action of the court.

In an action for damages to orchard from fumes of a smelting plant, argument of counsel that plaintiff was poor and helpless, down and out, broke and ruined, though improper, was not reversible error, where court, on objection, reprimanded counsel by saying that he must not try to prejudice the jury, and in the charge told the jury that it must not be swayed by prejudice, nor go outside of the evidence in determining the facts.

4. **Appeal and error** ⟨⟩1067—Refusal to modify instruction as to limitations held, on the record, harmless.

Where, in an action for damages to orchard from fumes of smelting plant, there was no evidence that any injury occurred to the orchard before 3 years prior to suit, though plant had been in operation 14 years, and there was evidence that at time injury was first noticed change in plant had occurred and a new chimney built, refusal to modify an instruction on the 5-year statute of limitations, that the invasion of rights of plaintiff began when defendant sent over his property gases which inflicted damages, and, if this occurred prior to the 5-year period preceding commencement of suit, the right of action was barred, by adding the words "irrespective of whether it committed any actual injury" to vegetation or trees on plaintiff's property, was harmless, conceding that the Illinois rule, as charged, was applicable.

In Error to the District Court of the United States for the Southern Division of the Southern District of Illinois.

Action by Peter Henke against the St. Louis Smelting & Refining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

William E. Wheeler, of East St. Louis, Ill., for plaintiff in error.

J. M. Bandy, of Granite City, Ill., and Charles D. Clark, for defendant in error.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge. In 1904 plaintiff ·in error con- structed, and since has continuously operated, in Madison county, Ill., a large plant for smelting and refining lead and other minerals. In the vicinity of the plant defendant in error long owned 47 acres of land, 30 acres of which were long devoted to orchard purposes. The action of defendant in error, begun March 8, 1918, was for the permanent injury to his land, caused by poisonous emanations from the plant settling upon his land, injuring and destroying his orchard, and, as claimed, causing a great pecuniary damage; his ad damnum being $50,000. The jury found a verdict for $4,000. Each party moved for new trial, which the court denied, and rendered judgment on the verdict. The company prosecutes the writ herein, and relies on four grounds of error, viz.: (1) Admission of evidence as to productivity of the orchard and sales of its product from 1915 to 1920, inclusive; (2) rejection of certain evidence of the expert qualifications of witness C. W. Bartells; (3) improper remarks of counsel in closing argument to the jury; and (4) improper charge of the court on the subject of the application of statute of limitations—the 5-year bar of the statute having been set up in one of the defenses to the action.

[1] 1. From the record, the purpose of the evidence respecting the annual orchard crop and the sales thereof was the bearing this might have on the market value of the land, before and after the alleged infliction of the injury. While the ultimate question doubtless was one of the market value of the land, if it had market value, its adaptability to some special advantageous use may be shown in corroboration or support of evidence of market value, or its unfitness for any beneficial use might be made to appear in support of evidence of a low market value. Crops and prices may be affected by a great variety of conditions other than the alleged injury, but this would go to the evidentiary value of the evidence, rather than to its competency. It is quite evident the jury was not by such evidence beguiled into believing that they had a right to award as damages the testified diminution in the returns from this orchard, or that they did in fact so find, and from consideration of the entire record we cannot conclude that this evidence was employed in any way, except in its bearing on the fair market value of the land at the times in question, for which purpose we do not find its admission was improper.

[2] 2. There was no error in the holding of the court that witness C. W. Bartells did not qualify as an expert. He was not a chemist, and had no experience in that highly technical branch, beyond assisting his brother, G. C. Bartells, in the making of a series of experiments on the emanations from this plant, and their effect upon the surrounding atmosphere, and upon trees and shrubbery. G. C. Bartells had fully qualified as an expert witness, and he testified in detail what was done, and his expert conclusions therein. The witness in question likewise testified to things he and his brother actually did in these experiments. But, apart from these, it does not appear that by occupation, or by study or experience, he was qualified to give opinion evidence.

[3] 3. The remarks complained of, made by counsel in the closing argument, were highly improper and wholly without justification. Counsel referred to his client as being poor and helpless, down and out, broke and ruined. On objection, the court promptly reprimanded counsel by saying he must not try to prejudice the jury. This of itself would warn the jury that such statements are calculated only to prejudice, and therefore improper. We think it fair to assume that, with such a characterization, the jury would be upon its guard against such statements. In the charge the court pointedly told the jury that it must not be swayed by prejudice, nor go outside of the evidence in determining the facts. With the jury thus carefully cautioned, and considering the entire record, we are satisfied that no harm accrued to plaintiff in error through the improper remarks.

[4] 4. The contention of error in the court's charge bearing on the application of the statute of limitations is predicated upon decisions in Illinois to the effect that where, for more than 5 years prior to beginning suit there existed the conditions which might cause the injury complained of, the statute of limitations would run against the action, notwithstanding actual damage did not occur until within the 5-year period. Schlosser v. Sanitary District, 299 Ill. 77, 132 N. E. 291, and cases there cited. If it be assumed that such is the law of this case, we believe the court's charge upon this subject was nevertheless substantially correct, as applied to this record. In the plant as originally constructed, and as conducted down to 1915, the gases passed through a long tunnel, or "trail," and through a series of bags for arresting the solid matter, and thence into the air through a chimney 200 feet high. From the uncontradicted evidence that during the 10 years preceding 1915 no injury accrued to the orchard by reason of emanations from the plant, which was about a mile away, it may reasonably be concluded that, if the jury found as a matter of fact such damage did accrue in 1915 and thereafter, it was through some condition in the plant which did not exist before 1915. There was evidence that such new conditions did first come into existence in 1915. It seems that for a considerable period in 1915 the "trail" was out of order, and was being repaired or replaced, and that about that time there was begun the erection of a new chimney, 400 feet high, through which, in the following year and thereafter, the gases from the plant passed into the air.

It is contended for defendant in error that, with the plant in the condition in which it was prior to 1915, such gases as reached the orchard were not sufficiently charged with the poisonous emanations (sulphur dioxide) to injure the orchard, but that in 1915 the intervening and first occurring condition of the "trail" caused so much more of the poisonous substance to be discharged from the chimney that much more of it reached the orchard, and did the damage, and that thereafter, through the doubling of the height of the chimney through which the gases passed into the air, far more of the gases were carried over the orchard, and that a far greater quantity of sulphur dioxide was thereafter precipitated upon the orchard than had ever been, or would have been in the use of the old chimney under normal circum-

stances. It was contended for plaintiff in error that the height of the new chimney greatly diffused the poison, so that in any event, by the time it fell upon the orchard, if any did so fall, it was practically innocuous. This, however, involved a question of fact, which, so far as concerns this case, the jury's verdict settles.

The court charged the jury that the invasion of the rights of defendant in error began, if and when plaintiff in error sent over his property the gases which inflicted damages, and that, if this occurred prior to the 5-year period preceding commencement of suit, the right of action was barred. Counsel for plaintiff in error requested a modification of the charge, by adding the words, "irrespective of whether it committed any actual injury to the vegetation or the trees upon the plaintiff's property," and the court declined to modify it. Had the plant been constructed, or had the new conditions intervened, but a short time preceding March 8, 1913, which was 5 years before the suit was begun, the requested modification would have been quite material. But with the undisputed evidence showing no injury for all the years next prior to the limitation period, and for 2 years afterwards, but appearing, if at all, immediately following new conditions in the plant during and after 1915, which were not present during the preceding years, we are satisfied that in any event no harm accrued to plaintiff in error through the court's refusal to make the requested modification.

Deeming the errors relied upon insufficient to warrant disturbance of the judgment, it is accordingly affirmed.